UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF NEW MEXICO

T. ROSARIO ROMAN,

    Plaintiff,

    v.                                                                        20cv00765 WJ/SCY

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DEFERRING RULING ON MOTION TO DISMISS
and
ALLOWING PLAINTIFF TO FILE SURREPLY**

THIS MATTER comes before the Court upon the Motion to Dismiss of Travelers Casualty Insurance Company of America ("Defendant"), filed January 8, 2021 **(Doc. 33)**. The Court will defer ruling on the matter pending submission of Plaintiff's surreply within two weeks from the entry of this Order.

## BACKGROUND

This case involves a dispute over the recovery of insurance benefits under a commercial policy issued by Defendant. Plaintiff made a claim under the policy alleging the property was damaged by a storm-related wind/hail event on or around September 1, 2018. Plaintiff claims that Defendant did not pay all the sums due under the policy. The Complaint against Defendant alleges: breach of contract; violation of the New Mexico Insurance Code, specifically § 59A-16-20; bad faith; and negligence. Both parties agree that the case is governed by New Mexico State Law.

Defendant contends that documents produced pursuant to this third-party subpoena reveal that Plaintiff was aware of the roof leaking when she purchased the property in 2014, that Plaintiff negotiated for roof repairs as part of her purchase of the property, that she demanded proof of completion of the repairs prior to closing, and even scheduled the repairs herself.

**I.      Relevant Discovery**

Defendant seeks dismissal of Plaintiff's case for discovery violations pursuant to Fed.R.Civ.P. 37(b)(2)(A) because Plaintiff has not provided adequate information in response to discovery requests regarding the condition of the property prior to the September 2018 storm. The following represents the chronology related to Defendant's discovery requests.

- *September 22, 2020.* First Interrogatories and Requests for Production ("RFP"). Plaintiff provided responses to these requests on October 22, 2020. The interrogatories sought information regarding (1) house inspections pre-dating Plaintiff's purchase of the house; (2) description of any prior leakage on the property including any repairs done; (3) witnesses to any such leakage; (4) documents referring to maintenance or repairs or estimates for repairs; and (5) names of contractors who worked at the house. Plaintiff's response provided a minimum of information, such as the name of the previous homeowner, broker, inspection date and date of purchase.

    o   Her response to questions about repair or mitigation efforts contained no information other than her own contact information and the contact information for an insurance appraisal group. Doc. 33-1 at 4 (Interrog. No. 13).

    o   In describing the work done by contractors who worked on the property from January 2010 to the present, Plaintiff gave only a name: Hector Espinoza.

    o   Plaintiff responded to questions about "maintenance of or repairs to the roof, gutters, or downspouts of the Property" by stating: Gutters cleaned every spring/fall; installed mesh to prevent clogging  doc. 33-2 at 1, (RFP No. 15)

    o   Where Defendant requested copies of "all estimates for repairs or maintenance obtained regarding the roof of the Property or the interior of the Property from 2010 to present," Plaintiff responded with "Plaintiff will supplement." Doc. 33-2 at 2 (RFP No. 17).

Plaintiff responded to most of Defendant's discovery requests with a panoply of objections ranging from "vague," "unduly burdensome," "harassing," ambiguous," "overbroad," "duplicative," and "expensive."

- *November 6, 2020.* In an attempt to obtain information about the pre-storm condition of the property, Defendant asked Plaintiff to supplement her responses. Doc. 33-3 (Nov. 6 letter). When Plaintiff's counsel did not respond, Defendant's counsel sent a follow-up email. Both e-mails made it clear that Defendant was seeking to avoid filing a motion to compel. Doc. 33-4. Plaintiff's counsel failed to respond to the follow-up email as well. Doc. 33-4.

    o November 12, 2020: Travelers' filed its Motion to Compel (Doc. 23). United States Magistrate Judge Steven C. Yarbrough granted the motion, requiring Plaintiff to supplement her responses no later than December 29, 2020 as well as Defendant's request for expenses involved in preparing the motion to compel. Doc. 29.[1]

    o The supplementations Plaintiff submitted in response to the Court's Order were modest at best, and neither supplementation provided any information regarding the condition of the property prior to the September 2018 storm. Doc. 33-5 & 6.[2]

- *November 9, 2020.* Prior to filing the motion to compel, Defendant sent a third-party subpoena to Berger Briggs, the agency involved in Plaintiff's purchase of the property. In late December 2020, Berger Briggs produced 139 pages of materials related to Plaintiff's purchase of the property in 2014. Doc. 33-7. Included in these documents was a counteroffer for the house in which Plaintiff stipulated to a purchase price and closing date, and stated her intention to conduct property inspections to reveal necessary repairs and if so, she reserved the right to adjust her offer accordingly. Doc. 33-7 at 000099-100.

    o These documents indicate that in 2014, at the time of purchase, Plaintiff was aware of roof leaks and that as a condition to her purchase of the property she required the seller to complete work which included roof repairs, splash guards and crack sealing labor. Doc. 33-7 at 000052-53. After the roofing work was completed, Plaintiff demanded a copy of the receipt to prove the labor was completed. *Id.* at 000052. AAA Roofing performed work totaling over $2,100 to

---

[1] Plaintiff did not respond to Defendant's request for attorney fees in its response to the motion to compel, *see* Doc. 29 at 2, nor did it object to Defendant's affidavit outlining expenses it incurred in preparing the motion to compel, *see* Doc. 40 at 1. The Court subsequently entered an Order Awarding Attorney Fees to Defendant in the amount of $2,126.35. *Id.*

[2] Plaintiff, however, did include supplemental information in response to Interrogatory No. 12 describing roof damage and "significant devastation to the property's interior" that resulted from the storm at issue in this case. Doc. 33-6 at 7.

- the roof and downspouts, all apparently related to roof leaks and ponding. *Id.* at 00005.[3]

  - E-mails in these documents reveal that Plaintiff arranged scheduling of repairs and inspections for plumbing and the HVAC system and asked for documented proof of their completion. Doc. 33-7 at 000063. She also hired a structural engineer, Frank Gauer, to perform an inspection of the property in February 2014. Plaintiff failed to produce any of this documentation in her discovery responses.

In light of the disclosures made by Berger Briggs, it begins to look like Plaintiff has been hiding the ball regarding inspections and repairs made to the property prior to the September 2018 storm—or at least protracting the discovery process. Defendant points out that while Plaintiff initially disclosed that Hector Espinoza was contracted to perform work to repair some of the storm damage, she did not provide Mr. Espinoza's contact information and work documentation until two months after these responses were due—and only after attempting good faith correspondence, filing a motion to compel and a Court order. *See* Doc. 33-6 at 8 (First Supp. Ans. To Interrog. No. 11). Similarly, while Plaintiff disclosed Ms. Laurie Levene as the seller of the house, she failed to produce information that she had negotiated roof repairs with Ms. Levene. Nor did Plaintiff disclose any other information that would have led Defendant to suspect there was a history of leakage, or that there were any repairs or inspections to the house done prior to the 2018 storm giving rise to Plaintiff's claims.

**II.    Relevant Law**

Pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, this Court has the authority to issue sanctions against a party for failure to comply with discovery obligations. The sanctions available to the Court include, but are not limited to, prohibiting the disobedient party from supporting claims or defenses or introducing designated matters in evidence, striking pleadings in whole or in part, staying further proceedings, dismissing the action, or treating the

---

[3] It is unclear, as Defendant notes, whether all of the roof damage that Plaintiff discovered was repaired prior to her purchase of the property. Doc. 33 at 4.

4

failure as contempt. *See* Rule 37(b)(2)(A)(i) to (vii).

Defendant requests dismissal of Plaintiff's case. However, dismissal represents an "extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) quoting *Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir.1988); *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872–73 (10th Cir.1987). The Tenth Circuit reasoned that, "because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort." *Id*. Dismissal is "appropriate only when the aggravating factors [like bad faith or willfulness] outweigh the judicial system's strong predisposition to resolve cases on their merits." *Id.*

In determining what sanctions to impose, the Court should consider factors such as "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance . . . ; and (5) the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

## DISCUSSION

Defendant seeks the sanction of dismissal on three grounds:

(1) Plaintiff's non-compliance with this Court's Order;
(2) Plaintiff has misrepresented her discovery to this Court and;
(3) Plaintiff even now withholds responsive materials.

In response, Plaintiff contends that she has not violated a Court Order and therefore should not be sanctioned in *any* manner pursuant to Rule 37(b)(2)(A):  First, she claims that produced almost 350 pages of documentation in response to Defendant's initial discovery requests, including several pages of documents pertaining to heating and cooling evaluation and a two-page estimate by AAA Roofing for repairs in the amount of $1,523.74, *see* Doc. 34-1 at 0327-0329.

5

Second, she assures the Court that in response to the Court's Order granting Defendant's motion to compel, she has turned over all the documentation and information she was able to locate.

I.     **Non-Compliance With Court Order**

Defendant does not dispute that Plaintiff produced about 350 pages of documentation in response to the initial discovery requests. Instead, Defendant claims that the disclosure was not timely because it was not complete, focusing specifically on a two-page AAA roofing repair estimate dated January 2013 which Defendant claims it has not seen until now when it was submitted by Plaintiff as part of her response to the instant motion. As proof, Defendant submits an exhibit comparing Plaintiff's Bates Label Range "Roman 0327-0329" for her October 22, 2020 production, and Bates Label Range "Roman 0327-0329" which was labeled as Plaintiff's "Exhibit A" to the response to this motion. And Defendant is indeed correct: the two-page AAA roofing repair estimate is missing from the initial disclosures and in its place on 0328 and 0329 are photographs of what appears to be a window screen "[i]nstalled in 2016" (according to the handwritten notation on the photo) and a photograph of a ceiling stain with the handwritten notation "[s]hows original stain and the ring growing as more rain came down." *See* Doc. 36-1 at 5 & 6.

There certainly is a discrepancy between the documents labeled as Plaintiff's Bates Roman 0327-0329 in the initial disclosures and those labeled within the same range as Exhibit A (Doc. 34-1) to the response. And it does appear that for some reason, Plaintiff's counsel saw fit to renumber the pages and add the two-page roofing estimate this time around for the response even though it definitely was not included in the initial October 22, 2020 disclosures. The photographs included in those disclosures suggest damage—if not repair—that occurred prior to the 2018 storm which arguably is partially responsive to Defendant's interrogatories.

Perhaps there is an explanation for the inconsistency between the two submissions of Bates Roman 0327-0329. Defendant notes that Plaintiff's initial discovery responses were attached to an email and labeled as Bates 001-0343. One might be tempted to say that the two-page AAA roofing

estimate is located elsewhere between Bates 0329 and 0343, but Defendant staunchly maintains that it has never seen the two-page roofing estimate until now, in response to its motion to dismiss.

## II.      Whether Plaintiff Continues to Withhold Discovery

Defendant claims that Plaintiff *continues* to withhold relevant and material discovery information.  In particular, Travelers refers to documents produced by third-party subpoenas such as the one issued to Berger Briggs which included Plaintiff's counteroffer demanding repairs to downspouts as a result of a February 2014 report by Frank Gauer; or a subpoena issued to Quality Masters Roofing revealing that additional roofing repairs had been made to the house prior to the storm. Doc. 36-3.[4]

Plaintiff insists that there is no discovery abuse going on here; that she has turned over to Defendant all documents and information within her possession; and that she cannot be expected to produce documentation that she does not have. Defendant argues that this no excuse. Documents are within a party's possession if the party has actual possession, custody, or *the legal right to obtain* the documents on demand. *National Union Fire Insurance Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 566 (D.Kan.1994); *see Tomlinson v. El Paso Corp.,* 245 F.R.D.474, 476 (D. Colo. 2007) ("'Control' comprehends not only possession, but also the right, authority, or ability to obtain the documents.").

The Court agrees with Plaintiff in that she cannot produce what she cannot find and does not have.  However, the Court also agrees with Defendant that parties have an obligation to do what they can to obtain the requested material and to suggest otherwise would motivate parties "to dispose of relevant material evidence to the extent it undermines their claims." Doc. 34 at 4. There is some indication that Plaintiff has not done all she should have done, or should do, in fulfilling her discovery obligations, for example:

---

[4] The letter from Quality Masters Roofing refers to work done on a "small leak" and invoice "for less than $500.00" but there is no indication of when the work was performed.

- A two-page roofing estimate from AAA shows up for the first time as an exhibit to Plaintiff's response, indicating that it has always been in Plaintiff's possession.

- Some of the documents produced by Berger Briggs in response to the subpoena were e-mails between Plaintiff and the agency specifically referencing maintenance and repairs to the roof prior to the storm. One would imagine that Plaintiff would have been able to locate at least her responsive communications to the agency—but these were never produced.

- Plaintiff has been silent as to the history of inspections and repairs to the property, revealed only later from the Berger Briggs production. Even if Plaintiff truly had no way of locating actual documentation information, her silence as to any leads ensured that Travelers' would have difficulty pursuing the discovery elsewhere.

### III. Plaintiff May File Surreply

The Court is troubled by the sudden appearance of the two-page AAA roofing estimate. The discrepancy in the Bates numbers belies Plaintiff claim that she produced the estimate to Defendant in her initial disclosures. Also, it raises a question on Plaintiff's insistence that she has fully complied with the Court's discovery order and turned over all the documentation and material she was able to find.

The issue may appear to be a tempest over two pages, but it withstands scrutiny nonetheless because it bears on a party's willingness to fulfill her discovery obligations in a case brought by that party against another, and potentially on an attorney's candor to the Court on representations made about discovery disclosures. Defendant may have sent out all the subpoenas it intends to issue, but the issue is not too late to address. Discovery is still pending until the deadline currently set as April 16, 2021. Doc. 27.[5] This lawsuit's past history reveals that in the very least, Plaintiff has taken a dilatory approach to her discovery obligations. This conclusion is based on Defendant's repeated attempts to obtain information from Plaintiff about

---

[5] The Court will of course defer to the Magistrate Judge assigned to the case to determine whether the deadline should be extended in light of the Court's inquiry into Plaintiff's alleged discovery abuses.

the condition of the property prior to the September 2018 storm, and by Judge Yarbrough's Court Order granting Defendant's Motion to Compel and request for attorney fees.

The Court will therefore DEFER conducting an *Ehrenhaus* analysis. For now, the Court will allow Plaintiff the opportunity to file a SURREPLY responding to Defendant's arguments in the reply relating to the two-page AAA roofing estimate; specifically that this document was not produced in Plaintiff's initial discovery responses, as Plaintiff represented in its response brief (*see* Doc. 34 at 2) but was produced by Plaintiff for the first time as Exhibit A in the response to this motion. In the surreply, Plaintiff may also respond to Defendant's claim that she continues to withhold discovery material. This surreply affords Plaintiff and her counsel the opportunity to explain what efforts Plaintiff has made to locate records relating to inspections and repairs of her house which she purchased in 2014 and which have been found to exist, but which Plaintiff has never produced.

- **Plaintiff's surreply is due ON OR BEFORE TWO (2) WEEKS FROM THE ENTRY OF THIS ORDER.**
- **Plaintiff's surreply is limited to the specific issues described above and the Court will not consider any arguments other than those responsive to those raised by Defendant in the reply.**
- **Should Plaintiff decide not to file a surreply, the Court will proceed to an *Ehrenhaus* inquiry after the deadline for the surreply has passed.**

**IT IS SO ORDERED.**

                                                                    WILLIAM P. JOHNSON
                                                                    CHIEF UNITED STATES DISTRICT JUDGE