# UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF NEW MEXICO

T. ROSARIO ROMAN,

      Plaintiff,

      v.                                                                                                    20cv00765 WJ/SCY

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## (1) GRANTING DEFENDANT'S MOTION TO DISMISS IN PART;
## (2) GRANTING DEFENDANT'S MOTION TO SUPPLEMENT BRIEFING;
## and
## (3) AWARDING DEFENDANT ATTORNEY FEES FOR FILING OF MOTION TO DISMISS AND TO SUPPLEMENT BRIEFING

THIS MATTER comes before the Court upon:

(1) Defendant's Motion to Dismiss Based on Discovery Violations, filed January 8, 2021 **(Doc. 33)**; and

(2) Defendant's Opposed Motion to Supplement Briefing on the Motion to Dismiss for Discovery Violations **(Doc. 45)**, filed April 14, 2021.

Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's Motion to Dismiss (Doc. 33) is partially granted in that:

(1) Plaintiff is ordered to supplement her discovery disclosures as described below; and

(2) Defendant is awarded attorney fees and costs, the exact amount of which is to yet be determined, associated with the filing of the motion to dismiss and the motion to supplement briefing (Docs. 33 and 45), due to Plaintiff's discovery abuses.

The Court grants Defendant's Opposed Motion to Supplement Briefing (Doc. 45).

## BACKGROUND

This case is a dispute over the recovery of insurance benefits under a commercial policy issued by Defendant. Plaintiff alleges that Defendant did not pay all the sums due when she made a claim under the policy alleging that her property was damaged by a storm-related wind/hail event on or around September 1, 2018. The Complaint asserts claims of: breach of contract; violation of the New Mexico Insurance Code, specifically § 59A-16-20; bad faith; and negligence. Both parties agree that the case is governed by New Mexico state law.

Defendant seeks dismissal of Plaintiff's case as a sanction for Plaintiff's failure to provide adequate information in response to discovery requests regarding the condition of the property prior to the September 2018 storm. Defendant claims that documents produced pursuant to a third-party subpoena reveal that Plaintiff was aware of the roof leaking when she purchased the property in 2014 and that she even negotiated roof repairs with the seller. However, Plaintiff has withheld, and continues to withhold, relevant discovery materials in response to discovery requests and has misrepresented her discovery to this Court.

## I. Court's Preliminary Consideration of Defendant's Motion to Dismiss (Docs. 33, 42)

On April 1, 2021, the Court preliminarily addressed Defendant's motion to dismiss, reviewing the chronology related to the discovery requests and Plaintiff's disclosures ("April 1st Order"). The Court agreed with Defendant that there was indeed some discrepancy in discovery produced by Plaintiff—for example, a two-page roofing estimate by AAA Roofing which had not previously been produced until Plaintiff's response to the motion to dismiss. Doc. 42 at 6. The Court also agreed with Defendant's contention that there appeared to be some foot-dragging on Plaintiff's part in fulfilling her discovery obligations. *Id.* at 7. The Court deferred a consideration of imposing sanctions under *Ehrenhaus* and instead afforded Plaintiff an opportunity to file a surreply in order to respond to (1) the sudden appearance of the AAA roofing estimate; and (2) the

charge that she continues to withhold discovery material related to inspections and repairs of her house.[1]  *Id.* at 9.

Plaintiff filed a surreply on April 15, 2021 (Doc. 47).

## II.    Defendant's Opposed Motion to Supplement Briefing (Doc. 45)

On April 12, 2021, following the deposition of Plaintiff on April 12th and the deposition of Caid Riggin of Allstate Public Adjusters, LLC on April 7th, Defendant requested leave of Court to supplement briefing on its motion to dismiss ("Supplement"). Mr. Riggin was the public adjuster involved in the adjusting of the underlying claim.[2] Defendant contends that the Supplement "bears directly" on the *Ehrenhaus* analysis the Court had deferred pending Plaintiff's filing of a surreply.

Plaintiff did not respond to Defendant's request to supplement briefing on the motion to dismiss and Defendant filed a Notice of Completion on May 4, 2021. Doc. 50. Under this Court's local rules, the Court may consider Plaintiff's failure to respond as consent to grant the motion. D.N.M. L.R.Civ-7.1(b). However, the Court would also have granted Defendant's motion because it contains new information based on Plaintiff's deposition testimony which was only made available to Defendant on April 13, 2021— two days before Plaintiff filed her surreply. The supplemental information provided by Defendant is therefore relevant to the issue of whether

---

[1] *See Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992).

[2] Defense counsel provides an interesting bit of background concerning the business of "public adjusters," who work on behalf of the insured to adjust claims. They usually work with roofing contractors and engage in "door-to-door sales tactics" following storms to sign up insureds to make insurance claims. If the insurer denies the claim because it finds no storm damage, the public adjuster and roofer then refer the insured to an attorney—in this case, McClenny, Mosely & Associates ("MMA") out of Houston, Texas—to file suit, and the public adjuster provides his estimate and photos to the attorney.  Under this rather convenient arrangement, the public adjuster pockets 10 percent of a claim, whether or not the case settles pre-litigation.  Doc. 45-2 at 60:12-18 (Riggin Depo.).  Defense counsel also notes that MMA itself does its share of storm chasing to bring in business and refers to a recent Facebook post showing an MMA attorney setting up an RV "base camp" at Lake Charles, Louisiana following a hurricane.  Doc. 45 at 3. While this description offers a rather jaundiced view of law firm "rainmaking," it is not necessarily inaccurate.  The Court includes it here because it could provide some context and explanation about what appears to be almost a collective effort on the part of Plaintiff's team to hamper discovery in this case.

Plaintiff has failed to comply with this Court's discovery orders—and if so, whether sanctions are warranted.

While the Court grants Defendant's request to supplement briefing, it views the "motion" itself as the supplement because it contains detailed additional information and argument. There is no reason to allow Defendant a second round of briefing when it has already had a first one.

## DISCUSSION

Defendant contends that Plaintiff has willfully failed to comply with this Court's discovery orders and seeks dismissal of Plaintiff's case pursuant to Fed.R.Civ.P. 37(b)(2)(A) and under *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

### I. Court's Previous Findings[3]

In its April 1st Order, the Court concluded that it did appear that Plaintiff was "hiding the ball regarding inspections and repairs made to the property prior to the September 2018 storm—or at least protracting the discovery process." Doc. 42 at 4. The Court's opinion was based on Plaintiff's various responses to Defendant's discovery requests:

- *September 22, 2020.* First Interrogatories and Requests for Production ("RFP"). Plaintiff provided responses to these requests on October 22, 2020. The interrogatories sought information regarding (1) house inspections pre-dating Plaintiff's purchase of the house; (2) description of any prior leakage on the property including any repairs done; (3) witnesses to any such leakage; (4) documents referring to maintenance or repairs or estimates for repairs; and (5) names of contractors who worked at the house.

    o Plaintiff's response regarding repair or mitigation efforts provided a bare minimum of information: the name of the previous homeowner, broker, inspection date and date of purchase and contact information for an insurance appraisal group. Doc. 33-1 at 4 (Interrog. No. 13).

    o In describing the work done by contractors who worked on the property from January 2010 to the present, Plaintiff gave only a name: Hector Espinoza.

---

[3] The Court incorporates its previous discovery review from its April 1st Order, followed by its review of the discovery requests and responses from Defendant's Supplement in order to include all of its analysis and findings in one document.

- Plaintiff's response to questions about "maintenance of or repairs to the roof, gutters, or downspouts of the Property" was: Gutters cleaned every spring/fall; installed mesh to prevent clogging. Doc. 33-2 at 1 (RFP No. 15)

- Defendant requested copies of "all estimates for repairs or maintenance obtained regarding the roof of the Property or the interior of the Property from 2010 to present." Plaintiff responded with "Plaintiff will supplement." Doc. 33-2 at 2 (RFP No. 17).

- Plaintiff responded to most of Defendant's discovery requests with a panoply of objections ranging from "vague," "unduly burdensome," "harassing," ambiguous," "overbroad," "duplicative," and "expensive."

- *November 6, 2020*. In an attempt to obtain information about the pre-storm condition of the property, Defendant asked Plaintiff to supplement her responses. Doc. 33-3 (Nov. 6 letter). When Plaintiff's counsel did not respond, Defendant's counsel sent a follow-up email. In both e-mails, Defendant made it clear that it was seeking to avoid filing a motion to compel. Doc. 33-4. Plaintiff's counsel failed to respond to the follow-up email as well. Doc. 33-4.

  - November 12, 2020: Travelers' filed its Motion to Compel (Doc. 23). On December 15, 2020, United States Magistrate Judge Steven C. Yarbrough granted the motion, requiring Plaintiff to supplement her responses no later than December 29, 2020 as well as Defendant's request for expenses involved in preparing the motion to compel. Doc. 29. Plaintiff did not respond to Defendant's request for attorney's fees in its response to the motion to compel, *see* Doc. 29 at 2, nor did it object to Defendant's affidavit outlining expenses it incurred in preparing the motion to compel, *see* Doc. 40 at 1. The Court subsequently entered an Order Awarding Attorney Fees to Defendant in the amount of $2,126.35. *Id*.

  - supplementations Plaintiff submitted in response to the Court's Order were modest at best, and neither supplementation provided any information regarding the condition of the property prior to the September 2018 storm. Doc. 33-5 & 6.[4]

- *November 9, 2020*. Prior to filing the motion to compel, Defendant sent a third-party subpoena to Berger Briggs, the agency involved in Plaintiff's purchase of the property. In late December 2020, Berger Briggs produced 139 pages of materials related to Plaintiff's purchase of the property in 2014. Doc. 33-7. Included in these documents was a counteroffer for the house in which Plaintiff stipulated to a purchase price and closing date, and stated her intention to conduct property inspections to reveal necessary repairs and if so, she reserved the right to adjust her offer accordingly. Doc. 33-7 at 000099-100.

---

[4] Plaintiff, however, did include supplemental information in response to Interrogatory No. 12 describing roof damage and "significant devastation to the property's interior" that resulted from the storm at issue in this case. Doc. 33-6 at 7.

- These documents indicate that in 2014, at the time of purchase, Plaintiff was aware of roof leaks and that as a condition to her purchase of the property she required the seller to complete work which included roof repairs, splash guards and crack sealing labor. Doc. 33-7 at 000052-53. After the roofing work was completed, Plaintiff demanded a copy of the receipt to prove the labor was completed. *Id.* at 000052. AAA Roofing performed work totaling over $2,100 to the roof and downspouts, all apparently related to roof leaks and ponding. *Id.* at 00005. It is unclear, as Defendant notes, whether all of the roof damage that Plaintiff discovered was repaired prior to her purchase of the property. Doc. 33 at 4.

- E-mails in these documents reveal that Plaintiff arranged scheduling of repairs and inspections for plumbing and the HVAC system and asked for documented proof of their completion. Doc. 33-7 at 000063. She also hired a structural engineer, Frank Gauer, to perform an inspection of the property in February 2014. Plaintiff failed to produce any of this documentation in her discovery responses.

Doc. 42. at 2-4.

Plaintiff's surreply offers no definitive explanation for the deficiencies in her discovery disclosures. Plaintiff's counsel assures the Court that Plaintiff's failure to provide the two-page AAA roofing invoice in the initial disclosures was unintentional error. Doc. 47 at 2. They profess that they are "puzzled" by the discrepancy and without the ability to "pinpoint the precise reason for the error"—except perhaps an oversight by a temporary staffworker at the law firm. Doc. 47 at 2.

The Court is, in turn, puzzled by Plaintiff's explanation. The Bates page numbers in question ("Roman 0327-0329") remain the same—both in the initial discovery requests and in the pages submitted in Plaintiff's response to Defendant's motion to dismiss. This suggests a *substitution* of documents rather than just an omission—which insinuates something more than inadvertence and mistake.

In response to the Court's request for clarification of Plaintiff's efforts to locate responsive documents to discovery requests, Plaintiff claims that she has searched for additional documents which were subsequently provided to her counsel and that she "has remained involved in the

process." Doc. 47 at 3. However, this claim is belied by Plaintiff's own deposition testimony and the testimony of her public adjuster, taken just a few days earlier, which the Court discusses next.

**II.    Court's Findings Based on Defendant's Supplement**

In its Supplement, Defendant contends that Plaintiff's deposition testimony reveals a willful refusal to search for responsive documents or to disclose responsive information regarding other insurance claims. The Court has reviewed the relevant excerpts from Plaintiff's and Caid Riggin's depositions (Docs. 45-1 and 45-2) and agrees that Plaintiff's conduct demonstrates to some degree, an unwillingness to participate in the discovery process in a case she initiated.

   A.    <u>Plaintiff Decided What Was Relevant Enough to Disclose</u>

Plaintiff failed to disclose response discovery material which she arbitrarily decided was not "relevant" or "important":

- Plaintiff testified that she found an e-mail regarding a leak over the side of the roof "having to do with the gutters" but did not give it to her lawyer because the lawyer asked her "to look for e-mails about the roofing . . . so I didn't think it was important." Doc. 45-1 (Pltff's Depo.) at 33:21-34:10.

- Plaintiff limited her search for documents in response to Defendant's discovery requests for insurance claims to "the documents pertaining to the [2018] leak." Doc. 45-1 at 50:3-12.

- In response to interrogatories asking her to disclose previous claims, Plaintiff acknowledged that other claims were relevant to discovery requests—yet she did not disclose some of those claims because she "didn't think it was important" and because she "didn't think it pertained to the [property at 5200 Copper]. Doc. 45-1 at 50:22-51:8; 137:12-15 (stating she did not list the Girard claim in response to Interrogatory Number 4 "because it wasn't relevant to Copper"); *see also id.* at 139:23-140:8 (Plaintiff's claim for roof replacement at Bali property that was not disclosed).

- Plaintiff did not disclose an inspection report in the property because she "didn't think it was relevant to the roof, to the structure of the roof." Doc. 45-1 at 156:6-10.

- Despite testifying that the roof replacement on her apartment complex was " unrelated" to the underlying claim (and thus unworthy of disclosure), Plaintiff felt that the claim was sufficiently "relevant" to discuss with her roofing contractor, Chris Hartman. Doc. 45-2

7

(Riggin Depo.) at 7:16-8:10 (describing claim involving apartment complex and referral for roof repair).

B.  Plaintiff's Efforts to Search for Responsive Discovery Material

Plaintiff's deposition testimony also reveals that her much-touted "ongoing search" for documents was cursory and perfunctory:

- Plaintiff has acknowledged that she requested roof, plumbing and structural inspections of the building prior to its purchase on April 12, 2021 and that she keeps a file regarding the condition of the property. However, Plaintiff has been equivocal about whether she has actually searched this file for any sales documents or inspections of the property. Doc. 45-1 at 31:4-32:8 (stating that file was "probably" at her house"; she "hopes" but "doesn't know" whether she has inspection documents in that folder; she "probably" has a copy of the structural inspection report "if they gave me one");

- Plaintiff admitted she has texted her contractor, Chris Hartman of Quality Masters Roofing, and her public adjuster, Caid Riggin of Allstar Public Adjusters LLC, regarding the property and claim at issue, yet she did not search for these texts in response to Defendant's discovery requests. Doc. 45-1 at 35:7-36:2. Neither did Plaintiff make any effort to find her e-mails correspondence Caid Riggin or Chris Hartman regarding the claim. Doc. 45-1 at 143:5-20:

    > Q. How about texts? Have you ever text Chris Hartman?
    > **A. Yes.**
    > Q. When was the last time you text Chris Hartman?
    > **A. I don't remember.**
    > Q. Have you looked for texts since this litigation was filed?
    > **A. No.**
    > Q. Why not?
    > **A. I don't know.**
    > Q. I'm sorry. Have you text Caid Riggin before?
    > **A. Yes.**
    > Q. Did you look for any texts with Caid Riggin --
    > **A. No.**
    > Q. -- for this litigation?
    > **A. No.**
    > Q. When was the last time you text with Caid Riggin?
    > **A. I don't remember.**
    > Q. Was it more than a year ago or less than a year ago?
    > **A. I don't remember.**

Doc. 45-1 at 35:25-36-2.

Apparently, evidence of emergency roof repairs to the property at issue here is in the possession of Plaintiff or her counsel, and yet this information has not been disclosed to Defendant. In his deposition, Caid Riggin testified that Plaintiff contacted him just a few months ago regarding

8

emergency roof repairs to the property at issue in this litigation involving another roofer who has not been disclosed in this litigation. Doc. 45-2 at 6:14-7:15. Mr. Riggin testified that he forwarded the invoice and for these repairs to Plaintiff's counsel. *Id.*

Plaintiff's lack of enthusiasm in fulfilling her discovery obligations seems to extend as well to Mr. Riggin, her public adjuster, who has also refused to provide any communications regarding this claim when he responded to Defendant's third-party subpoena in this case. *See* Doc. 22 (Notice of Subpoenas). In his deposition, Mr. Riggin acknowledged that he had been expected to bring certain documents with him but had brought none with him. However, he showed up without any of the requested material unapologetically advised defense counsel he "can look" for the materials and would "send them" to counsel afterward. Doc. 45-2 at 5:5-18. Mr. Riggin essentially conceded that he had never searched for communications related to this claim in response to the subpoena duces tecum issued *five months* prior to his deposition:

> Q. Prior to today's deposition, did you search for these items so you could show up here -- or show up there on Zoom with the items that I requested for the deposition?
>
> **A. I will have that here in just a few minutes if** 6 **there is any. I'll search it real quick, and I'll have that done.**
>
> Q. That kind of interferes with my ability to completely depose you here today. So I'll go ahead and continue, but like the deposition we did this morning, I may have to reconvene to address those things. Do you understand?

*Id.* at 6:1-12.

Based on what has been disclosed by Plaintiff thus far and statements made by Plaintiff in her deposition, the Court agrees with Defendant that Plaintiff has been less than diligent in providing available and responsive discovery materials. The question now is whether sanctions are warranted and if so, the nature of those sanctions.

### III.    Relevant Law Regarding Rule 37 and *Ehrenhaus*

Pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, this Court has the

9

authority to issue sanctions against a party for failure to comply with discovery obligations. The sanctions available to the Court include, but are not limited to, prohibiting the disobedient party from supporting claims or defenses or introducing designated matters in evidence, striking pleadings in whole or in part, staying further proceedings, dismissing the action, or treating the failure as contempt. *See* Rule 37(b)(2)(A)(i) to (vii).

Defendant requests dismissal of Plaintiff's case. Dismissal is appropriate "when a party has willfully or in bad faith disobeyed a discovery order." *In re Standard Metals Corp.*, 817 F.2d 625 (10th Cir. 1987). However, dismissal represents an "extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) quoting *Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir.1988); *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872–73 (10th Cir.1987). The Tenth Circuit reasoned that, "because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort." *Id*. Dismissal is "appropriate only when the aggravating factors [like bad faith or willfulness] outweigh the judicial system's strong predisposition to resolve cases on their merits." *Id.*

In determining what sanctions to impose, the Court should consider factors such as "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance . . . ; and (5) the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

IV. **Whether Sanctions are Appropriate**

The Court finds that throughout the discovery process, Plaintiff has withheld information regarding the condition of the property when she purchased it as well as other information that

would have led Defendant to believe there was known history of leakage to the property prior to the 2018 storm. Plaintiff has also taken on the role as final arbiter of the relevance of information which needs to be disclosed, regardless of whether that material is responsive to Defendant's discovery requests.

Defendant contends that it has been prejudiced by Plaintiff's abuse of the discovery process, having had to repeat requests for supplementation. *See, e.g.,* Docs. 33-1, 33-2, 33-5 and 33-6. Had Defendant not subpoenaed third-party Berger Briggs, it never would have become aware of probative and plainly responsive evidence regarding roof damages, repairs and additional hired contractors, all of which pre-dated the September 1, 2018 storm. Doc. 33-7. Defendant claims that now it cannot be sure what other responsive material is being intentionally withheld. *See Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009) (acknowledging that discovery abuses substantially prejudice the opposing party by "casting doubt on the veracity of all of the culpable party's submissions throughout litigation . . . .").

Defendant also contends that Plaintiff's misconduct has interfered with the judicial process by ignoring the Court's Order to produce the supplementation requested by Defendant, *see* Doc. 29, and that Plaintiff has to this day failed to produce any of the documents referenced in the Berger Briggs production or given any reason for that failure. *See* Doc. 33-7; *see also Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993) ("It is enough to say the [plaintiff] repeatedly ignored court orders and thereby hindered the court's management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party.").

The Court finds that Plaintiff's conduct is sufficiently culpable to warrant some form of sanctions, but finds that dismissal is not appropriate at this time for two reasons: Plaintiff has not previously been warned in advance that her case could be dismissed for noncompliance; and the

efficacy of lesser sanctions has not yet been tested.[5]  Plaintiff will therefore be afforded another chance to satisfy her due diligence obligations in the discovery process, but at the same time will not get a complete pass for the discovery abuses she has inflicted on both Defendant and this Court. **Further, Plaintiff is hereby advised that failure to rectify the discovery shortfall or continued evasion of her discovery obligations in the future—or any other noncompliance with Court orders—will be met with this Court's serious consideration of dismissal of her case as a sanction.**

It is clear that responsive discovery material has been available to Plaintiff but that she has opted—for one reason or another—not to produce it.  The diligence of her search for responsive documents is questionable, and she has not been inclined to obtain such information from other accessible sources such as Chris Hartman, her contractor or Caid Riggins, her public adjuster. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 382 (D.N.M. 2018) ("Simply put, if a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it."). **The Court will therefore: (1) order Plaintiff to supplement her discovery responses as described in more detail below; and (2) award defense counsel attorneys' fees related to filing of the motion to dismiss and the motion to supplement (Docs. 33 and 45).  The case will also be referred back to United States Magistrate Judge Steven Yarbrough to reset discovery deadlines in light of this Court's rulings.**

**THEREFORE,**

---

[5] Defendant points out that pre-warning is not a prerequisite for dismissal, citing to *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, where the plaintiff in that case was not warned of the imminent dismissal and whether the court did not evaluate the *Ehrenhaus* factors.  70 F.3d 1172 (10th Cir. 1995). The Tenth Circuit affirmed the dismissal, noting the "egregious nature" of plaintiff's conduct where plaintiff concealed her medical history, repeatedly perjured herself and "thus failed to cooperate in the discovery process." *Id.* at 1174.  Ms. Roman's dilatory conduct has certainly interfered with the judicial process and thwarted Defendant in its attempts to defend itself thus far, but has not quite (yet) reached the depths of the *Archibeque* plaintiff—and thus, this Court considers a pre-warning both appropriate and necessary before dismissal.

**IT IS ORDERED** that Defendant's Motion to Dismiss for Discovery Violations **(Doc. 33)** is GRANTED IN PART in that:

(1) The Court hereby orders Plaintiff to redirect her efforts in another search of her files, e-mails and text messages, for information that is responsive to Defendant's discovery requests, including but not necessarily limited to: (a) supplementation that was ordered by the Court on December 15, 2020 (Doc. 29); (b) material which Plaintiff did not disclose only because she did not consider them "relevant" or "important"; and (c) documentation that is easily accessible from other sources, such as her contractor or public adjuster. The deadline for Plaintiff's supplementation will be determined by Magistrate Judge Yarbrough;

(2) The Court hereby imposes upon Plaintiff a sanction less drastic than dismissal, based on what it considers to be Plaintiff's purposeful avoidance of her discovery obligations. The Court awards Defendant attorney fees and costs associated with Defendant's Motion to Dismiss for Discovery Violations (Doc. 33) and the Motion for Supplemental Briefing (Doc. 45). Counsel for Defendant shall submit a supporting affidavit and time sheet within TWO WEEKS of the entry of this Order. Plaintiff may file objections to the requested fees and costs TWO WEEKS from Defendant's submission;

(3) The Court GRANTS Defendant's Motion to Supplement Briefing (Doc. 45); and

(4) Finally, the Court refers this case to United States Magistrate Judge Steven Yarbrough to reset discovery deadlines in light of this Court's ruling including setting a deadline for Plaintiff to comply with her discovery obligations under this Order.[6]

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The discovery deadline, initially set for April 16, 2021, is currently May 17, 2021 (Doc. 48).