# UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF NEW MEXICO

T. ROSARIO ROMAN,

    Plaintiff,

    v.                                                                                                  20cv00765 WJ/SCY

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S "COSTING EXPERT" FRED LUPFER

THIS MATTER comes before the Court upon a Motion to Exclude Testimony by Plaintiff's "Costing Expert" Fred Lupfer, filed on July 6, 2021 by Defendant Travelers Casualty Insurance Company of America **(Doc. 56)**. Having reviewed the parties' briefing and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

This case centers around a dispute over the recovery of insurance benefits under a commercial policy issued by Defendant. Plaintiff alleges that Defendant did not pay all the sums due when she made a claim under the policy alleging that her property was damaged by a storm-related wind/hail event on or around September 1, 2018. The Complaint asserts claims of: breach of contract; violation of the New Mexico Insurance Code, specifically § 59A-16-20; bad faith; and negligence. Both parties agree that the case is governed by New Mexico state law.

In this motion, Defendant seeks an Order excluding the testimony of Plaintiff's proposed expert witness, Fred Lupfer, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Mr. Lupfer is proffered as a "costing expert" to testify to the purported reasonableness of Plaintiff's public adjuster's estimate for repairs, Caid Riggin of All Star Public Adjusters, LLC ("All Star").[1] Defendant contends that Mr. Lupfer's experience with New Mexico costing is limited to the entering of line items into a costing software ("Xactimate"), which was initially used by Mr. Riggin to provide the All Star cost estimate. Defendant claims that Mr. Lupfer is not offering an independent opinion at all and that his experience is limited to reentering (at times, incorrectly) the line items suggested by the same costing software utilized by Mr. Riggin to originate the proposed costs repair damage to the property. Defendant argues that Mr. Lupfer does not have the expertise required under *Daubert* to offer an opinion on costing because he did not even inspect the damage to the building's interior, and that his payment of the costing software's licensing fee does not render him a New Mexico costing expert.

**DISCUSSION**

Under the well-established standard set forth in *Daubert*, qualified expert testimony: (1) must be based on sufficient facts or data; (2) must be the product of reliable principles and methods; and (3) the expert must have applied the principles and methods reliably to the facts of the case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); Fed.R.Evid. 702; *see Hall v. Conoco Inc.*, 886 F.3d 1308, 1311 (10th Cir. 2018). *Daubert* provides a "flexible" framework for courts to use in their roles as gatekeepers of expert testimony. *Hoffman v. Ford Motor Co.*, 493 F.App'x 962, 974 (10th Cir. 2012) (internal citation omitted). Depending

---

[1] According to information provided by Defendant in past briefing, public adjusters work on behalf of the insured to adjust claims. *See* Doc. 51, n.2.

on the nature of the issues presented and the expert's particular expertise, certain factors may or may not be pertinent to an evaluation of reliability, but the purpose of the *Daubert* inquiry is always "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 975 (citing *Dodge v. Cotter Corp*, 328 F.3d 1212, 1222–23 (10th Cir. 2003); quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Neither party requests a hearing, which *Daubert* does not require where the court makes sufficient findings on the record.  *See United States v. Call,* 129 F.3d 1402 (10th Cir. 1997); *Robinson v. Missouri Pacific*, 16 F.3d 1083, 1089 (10th Cir.1994) (*Daubert* analysis requires a district court to "carefully and meticulously" review the proffered scientific evidence); *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir.1999) (a district court is granted great latitude in deciding whether to hold formal *Daubert* hearing).

Defendant challenges Mr. Lupfer's qualifications as well as the reliability and relevance of Mr. Lupfer's opinion.

**I.      Qualifications**

An expert is required to possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation." *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).

Mr. Lupfer has served as a cost expert on multiple New Mexico property insurance cases similar to the instant case, *see* Ex. F, and as an appraiser in several appraisal cases in New Mexico, *see* Ex. D at 9:1-3. He has had experience as a licensed public adjuster for residential and commercial losses and fifteen years of experience in roofing and construction.  Ex. 2.

Nevertheless, Defendant contends that Mr. Lupfer's testimony falls outside the "reasonable confines" of his expertise because Mr. Lupfer has no experience as a public adjuster in the state of New Mexico or bidding on construction projects in the state, and because his only information regarding New Mexico pricing is the information generated by Xactimate. *See* Ex. 4 (Lupfer Depo.) at 7:1-25; *see Conroy v. Vilsack,* 707 F.3d 1163, 1168 (10th Cir. 2013) (testimony that does not fall within "reasonable confines" of expert's skill, experience or knowledge is not admissible).

It is not clear why Defendant feels that Mr. Lupfer should have experience in adjusting or contractor bidding in New Mexico in order to offer an opinion on costs associated with removal and replacement of items due to damages caused by a severe weather event. True, the fact that a witness is qualified as an expert in one field does not make him an expert in a closely related field. For example, in *Ralston v. Smith & Nephew Richards, Inc.,* the Tenth Circuit affirmed exclusion of a doctor who sought to testify regarding the adequacy of warnings related to surgical procedure). 275 F.3d 969 (10th Cir. 2001). Here, however, Mr. Lupfer is being called as an expert in a field in which he has had experience—and for which he is therefore qualified.[2] *See* Ex. 4 at 10:20-22 (testimony by Mr. Lupfer that he was "only serving as an expert in this case on pricing. . . .").

Defendant's argument about pricing differences is greatly exaggerated. Mr. Lupfer stated that he was familiar with the pricing in New Mexico by virtue of the fact that the pricing between the zip codes of New Mexico, Texas and Colorado are not "dramatically different." Ex. 4 at 9:18-19 (". . . as a general rule, the pricing is similar state to state"). Mr. Lupfer also explained that the New Mexico pricing structure that is included in the software is based on a "polling of . .

---

[2] Defendant references the storm as occurring on July 30, 2018, *see* Doc. 56 at 9, but other pleadings in the case indicate that the storm occurred in September of 2018. *See, e.g.,* Doc. 1-1 (Compl.), ¶11; Doc. 9 (Jt. Status Rep't) at 2.

. a set of contractors . . . who work the area," *id.* at 9:23-25-10:1-5, and Defendant does not suggest that the Xactimate pricing estimates are inherently faulty. Thus, any purported "pricing differences" from state to state do not render the report inadmissible under *Daubert*.

**II.     Reliability**

Defendant next claims that Mr. Lupfer's opinions regarding the cost of replacement are unreliable because he (1) performed no meaningful independent analysis, and (2) estimated the cost of repairing all damage to interior and exterior of the building and not just damage caused by the storm.

Reliability is determined by whether: (1) testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; (3) and the witness has applied the principles and methods reliably to the facts of the case. *Smith v. Sears Roebuck and Co.*, 232 Fed.Appx. 780, 781 (10th Cir. 2007). Under *Daubert*, proposed expert testimony must be supported by "appropriate validation," that is, "good grounds, based on what is known." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (citing *Daubert,* 509 U.S. at 590).

   A.     <u>Independent Research or Investigation</u>

Defendant contends that Mr. Lupfer's failure to conduct independent research into the relevant market renders his opinion unreliable and inadmissible.

*1. Reliance on Xactimate Estimate Completed by Caid Riggin / All Star*

Defendant's primary grievance against Mr. Lupfer's opinion is that Mr. Lupfer performed no meaningful investigation or analysis because he accepted as true Caid Riggin's estimate and measurements and inputted them, line-item by line-item, into the Xactimate software.

Defendant relies on two cases from the Tenth Circuit for support by comparison. In *Rodgers v. Beechcraft Corp.,* the Tenth Circuit upheld a district court order excluding an expert who opined that a pilot was "trained, qualified, experienced and capable of performing the subject mission," but did not conduct "independent research" into the pilot's training or speak with any of the pilot's trainers.  759 F. App'x 646 (10th Cir. 2018).  In that case, however, the expert also completely ignored significant evidence that conflicted with his opinion, namely that the pilot allowed a non-pilot to operate the plane.

In *Alfred v. Caterpillar, Inc.,* the Tenth Circuit agreed with the district court's opinion of expert testimony that it was "backed by very little work and very little expertise, among other problems."  262 F.3d 1083, 1088 (10th Cir. 2001).  These "other problems" included the fact that the expert gained his knowledge of the specialty on which he opined literally a week prior to the trial and *after* he had already arrived at his opinion regarding defective asphalt pavers.

The Court finds that the objectionable aspects of the experts' opinions in both *Rodgers* and *Alfred* are not present here and that Mr. Lupfer's reliance on Xactimate does not render his opinion unreliable under *Daubert*.  As an expert, Mr. Lupfer is entitled to rely on material he did not generate himself.  An expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed.R.Evid.703; *see TK-7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (Rule 703 allows an expert to base an opinion on facts or data not admissible in evidence if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject); *see* Ex. 4 (Lupfer Depo. at 11:18-21 (stating that All Star has "proven to be a reliable source" as far as photo documenting and providing a description of property damage).

Defendant does not take issue with the reliability of Xactimate software itself—only that Mr. Lupfer parroted All Star line item entries and failed to perform any independent research of his own. However, this criticism of Mr. Lupfer's performance is not supported by the record.

Mr. Lupfer stated that he was hired to review "All Star's estimate and comment on the reasonableness of those items"; to "verify the cost of the repairs"; and to provide an estimate of the damages from a hail/wind loss event. Ex. 4 at 10:1-7; at 62:20-25; Ex. 3 (Lupfer report). Mr. Lupfer did not consider his role to be that of "rubber stamping" All Star's estimate, Ex. 4 at 11:1-17 ("I'm not strictly hired to go back and just look at [the All Star estimate]"). He testified that reviewing the All Star estimate was just "one portion" of his analysis, and that he also reviewed any supporting documents related to the claim. *Id.* While he did not take actual measurements, he verified them using other means, for example, through Google Earth and by making his own mathematical calculations. Ex. 2 ("Measurements for the property were also verified during the inspection"); Ex. 4 at 16:8-16. Mr. Lupfer made his own conclusions as to the reasonableness of All Star's pricing estimates even though he used that estimate as a starting point. *Id.* at 11:5-8. In other words, the "price list" originating with the All Star estimate was subject to change, based on determinations made by Mr. Lupfer relying on his own experience and analysis. Ex. 4 at 11:12-13 ("the price list can change and some of the other things can go into it. . . .").

### 2. Inspection of Property and Miscalculations

Defendant contends that Mr. Lupfer's report is not reliable because Mr. Lupfer did not inspect the inside of the house or speak to anyone on the property, and because the report contains miscalculations. *See, e.g.,* Ex. 4 at 62:1-25 (estimate included carpet replacement cost in a room with tile, relying on All Star Xactimate report); and at 47:12-18 (date for report not updated). However, while Mr. Lupfer did not personally inspect the inside of the property, he

did conduct an onsite inspection of the property to document the damages resulting from the loss and also viewed photos provided by All Star to verify the damage in the interior. Ex. 2; Ex. 4 at 14:11-15; at 17:12:25; 50:1-14. The Court finds that these challenges to Mr. Lupfer's opinion and report are not sufficient as a basis to conclude that Mr. Lupfer's methodology is unreliable and inadmissible under *Daubert*.

      B.      Causation

Defendant argues that Mr. Lupfer's testimony is unreliable because it does not include any expert opinion regarding causation. Yet there is no indication that Mr. Lupfer was hired to offer an opinion on what *caused* the damages to the subject property. By his own admission, Mr. Lupfer was hired only to "review All Star's estimate and comment of the reasonableness of those items." Ex. 4 at 10:17; at 62:20-25 (". . . I was estimating on the cost of it . . . and I wasn't going into either coverage or causation"). Even so, Mr. Lupfer's testimony is not devoid of causation evidence. Mr. Lupfer used the results and findings of his own visual inspection and his skill, knowledge, experience, education and training as an insurance and public adjuster to prepare his Xactimate estimate of repairs. *See* Ex. D at 30:6-23; Ex. E; Ex. F. He also reviewed and considered the photographs and estimate of the damage provided by Caid Riggin. All of this evidence establishes a link to Plaintiff's claims.

A certain pattern emerges with respect to Defendant's objections to Mr. Lupfer's opinion: they are at worst, potential flaws and weaknesses that are all subject to cross-examination and weighed by the fact-finder. A plaintiff need not prove that the expert is undisputably correct, but must show only that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements. *Mitchell,* 165 F.3d at 781; *McCoy v. Whirlpool Corp.,* 379 F.Supp.2d

1187, 1197 (D.Kan.2005) (where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of independent testing may "go to the weight, not the admissibility of the testimony") (citing *Zuchowicz v. United States,* 140 F.3d 381, 387 (2d Cir.1998) (internal quotes omitted); *see also Potter Voice Techs. LLC v. Google, Inc.*, 37 F. Supp. 3d 1189, 1192 (D. Colo. 2014) (to the extent there are deficiencies or other flaws in expert's relevant qualifications, those evidential issues affect weight, not admissibility); *U.S. v. Baines,* 573 F.3d 979 (10th Cir. 1009) ("[v]igorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence") (citing *Daubert,* 509 U.S. at 596).

The Court finds that the method used by Mr. Lupfer to arrive at his opinion meets the *Daubert* standard for reliability. Any sloppiness or inaccuracies in that opinion can be tested through cross-examination and weighed by the fact-finder at trial.

**III.     Relevance and Helpfulness to Jury**

Defendant's last challenge to Mr. Lupfer's opinion testimony is that it would not assist the fact-finder and instead would only confuse the factfinder through inconsistent testimony backed by no personal expertise. The Court disagrees with this assessment. Knowledge about the cost to repair damages to Plaintiff's property caused by a severe weather event is not the kind of information that is within the jury's understanding as laypeople and so Mr. Lupfer's testimony—which the Court finds to be reliable—will also be relevant and will assist the jury in rendering its decision.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude Testimony by Plaintiff's "Costing Expert" Fred Lupfer **(Doc. 56)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE